1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **EASTERN DISTRICT OF CALIFORNIA**
10
11   TIMOTHY GRISMORE and XAVIER HINES,   )   Case No.: 1:17-cv-0413- JLT
                                          )
12              Plaintiffs,               )   ORDER ON MOTIONS IN LIMINE
                                          )
13         v.                             )   (Docs. 66, 67, 68, 69, 70, and 71)
                                          )
14   CITY OF BAKERSFIELD, et al.,         )
                                          )
15              Defendants.               )
                                          )
16   _____ )

17         Timothy Grismore and Xavier Hines contend they were subject to a discriminatory detention

18   and arrest by Bakersfield police officers on December 5, 2016. They contend the defendants violated

19   their civil rights arising under federal and state laws. The defendants deny all wrongdoing, and assert

20   the plaintiffs' civil rights were not violated by the officers.

21         Plaintiffs and Defendants now bring motions in limine to establish what evidence may be

22   offered at trial.

23   **I.      Legal Standards Governing Motions in Limine**

24         "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the

25   practice has developed pursuant to the district court's inherent authority to manage the course of

26   trials." Luce v. United States, 469 U.S. 38, 40 n. 2 (1984).  The Ninth Circuit explained motions in

27   limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present

28

                                              1

potentially prejudicial evidence in front of a jury." <u>Brodit v. Cabra</u>, 350 F.3d 985, 1004-05 (9th Cir. 2003) (citations omitted).

Importantly, motions in limine seeking the exclusion of broad categories of evidence are disfavored. <u>See</u> <u>Sperberg v. Goodyear Tire and Rubber Co.</u>, 519 F.2d 708, 712 (6th Cir. 1975). The Court "is almost always better situated during the actual trial to assess the value and utility of evidence." <u>Wilkins v. Kmart Corp.</u>, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). The Sixth Circuit explained, "[A] better practice is to deal with questions of admissibility of evidence as they arise [in trial]" as opposed to ruling on a motion in limine. <u>Sperberg</u>, 519 F.2d at 712. Nevertheless, motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." <u>Jonasson v. Lutheran Child & Family Services</u>, 115 F.3d 436, 440 (7th Cir. 1997).

"[A] motion in limine should not be used to resolve factual disputes or weigh evidence," <u>C & E Services, Inc. v. Ashland Inc.</u>, 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the province of the jury. <u>See</u> <u>Reeves v. Sanderson Plumbing Products</u>, 530 U.S. 133, 150 (2000). The Court will bar use of the evidence in question only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. <u>Jonasson</u>, 115 F. 3d at 440.

For example, under the Federal Rules of Evidence, any evidence that is not relevant is not admissible. Fed. R. Evid. 402. To determine that evidence is relevant, the Court must find "(a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Nevertheless, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The rulings on the motions in limine made below do not preclude either party from raising the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrate a change of circumstances that would make the evidence admissible, such as for impeachment or if the opponent opens the door to allow for its admissibility. However, if this occurs, the proponent of the evidence

**SHALL** raise the issue with the Court outside the presence of the jury. Finally, the rulings made here are binding on all parties and their witnesses and not merely to the moving party.

**II.      Plaintiffs' Motion in Limine No. 1 (Doc. 67)**

Plaintiffs seek to exclude evidence regarding information not known to the defendants at the time of the incident, specifically including:

> (a) prior or subsequent alleged misconduct by Plaintiffs, including subsequent encounters between Xavier Hines and campus police (this category would include, without limitation, any testimony by Defendants' proposed witnesses Frederick Reyes, M. Gonzalez, Steve Holmes, and Don Williams, who propose to testify as to contact with Xavier Hines outside the time frame of the incident);
>
> (b) Timothy Grismore's alleged conduct at the hospital on the night of the incident; [and]
>
> (c) Plaintiffs' academic records, enrollment history, and grades, including the issue of whether Timothy Grismore was enrolled in college at the time of the incident.

(Doc. 67 at 2, 4) According to Plaintiffs, "these categories of information and evidence are simply not relevant, since the defendants were not aware of them at the time of the incident." (Id. at 4) Plaintiffs contend much of this evidence, if admitted, "would be character evidence… to establish how the incident transpired." (Id.) Third, Plaintiffs argue "any reference to this information would be highly prejudicial at trial in this case, in light of its potential for confusion when balanced against its lack of relevance." (Id.)

Defendants oppose the motion, arguing the "evidence is relevant and should be admitted be admitted at the time of trial." (See Doc. 75 at 6)

**A.      Prior misconduct**

As an initial matter, while Plaintiffs seek to exclude evidence of "prior or subsequent misconduct," Plaintiffs have not clearly identified any potential evidence related to *prior* bad acts by Plaintiffs. (See Doc. 67 at 5-6) Plaintiffs assert that "on one occasion Hines allegedly checked out video game controllers from a community game room and failed to return them," yet it is unclear whether this occurred prior to the encounter with the defendants. (See id.) To the extent this occurred prior to the underlying incident, Defendants do not assert they had any information regarding prior bad acts by Plaintiffs. See Ruvalcaba v. City of Los Angeles, 64 F.3d 1323, 1328 (9th Cir. 1995) (holding

3

what is known to the officer at the time bears on the facts and circumstances of the event). Thus, the motion is **GRANTED** as to evidence related to prior misconduct by Plaintiffs.

### B. Subsequent alleged misconduct by Plaintiffs

The parties report that Xavier Hines had more than one encounter with officers after the underlying incident, which "escalated into a full-blown criminal prosecution." (Doc. 67 at 6; see also Doc. 75 at 6) Specifically, Defendants report that on April 4, 2017, Hines was stopped by Cal State Bakersfield Police Officer Frederick Reyes after Hines entered the exit door of a gym on the college campus. (Doc. 75 at 6) According to Defendants:

> The exit was not an authorized entry and is only supposed to be used in emergency situations. Officer Reyes believed that the individual was attempting to defraud and avoid payment for entry into the SRC. Officer Reyes yelled out to the individual but the individual ignored him. Officer Reyes then went into the SRC and made contact with the individual, asking if he had a membership and the individual said he did not. The individual stated he used to be a student at CSUB but was not anymore. Officer Reyes asked the individual for identification and the individual said he didn't have any on him. Officer Reyes asked for the individual's name and he responded Pablo Van Hynes. The individual spelled out his last name and gave Officer Reyes a date of birth. The individual claimed he didn't know his social security number or driver's license number. Officer Reyes did a records check and found no one with that name. Officer Reyes told the individual that he needed to identify himself. At that point, the individual pulled out a wallet from his sweater pocket and provided a driver's license indicating he was Xavier Hines. Hines was issued a citation for violation of California Penal Code 148.9(a) – Falsely representing himself as another person to a peace officer.

(Doc. 75 at 6) After Hines failed to appear, an arrest warrant was issued. (Id. at 7) Defendants report that after learning the arrest warrant was issued, Hines fled from an officer on June 26, 2017. (Id.) After being chased by the officer and arrested, "Hines was charged with resisting arrest in violation of Penal Code 148(A)(1) and pled no contest." (Id.)

Plaintiffs contend "[n]one of this material has anything to do with the case" and "[s]ince the officers were unaware of it at the time of the incident, it would not help the jury evaluate the officers' conduct." (Doc. 67 at 6) On the other hand, Defendants contend evidence related to Hines' conduct on April 4 and June 26, 2017 should be admitted on the question of damages. (Doc. 75 at 6-7, citing *e.g.*, Peraza v. Delameter, 722 F.2d 1455, 1457 (9th Cir. 1984); *Halvorsen v. Baird*, 146 F.3d 680, 686-87 (9th Cir. 1998))

As Defendants observe, "In Peraza v. Delameter, which was a Fourth Amendment excessive force case, the Ninth Circuit found that evidence of subsequent encounters with the police could be

introduced for the issue of damages." (Doc. 75 at 7, citing <u>Peraza</u>, 722 F.2d at 1457) The Court determined there was no abuse of discretion where the trial judge admitted evidence that the plaintiff "had subsequent encounters with the police and difficulties in school." <u>Peraza</u>, 722 F.2d at 1457. In so holding, the Court observed that the plaintiff sought damages "for the injury incurred by his 'head, body and psyche' as a result of the arrest," and found "sufficient basis to conclude [the evidence related to subsequent encounters] went to the issue of damages." <u>Id</u>.

The Court is not certain whether Mr. Hines intends to testify that he suffered ongoing emotional/psychiatric/mental issues related to the events at issue or exactly what he will say related to his damages. Clearly, this evidence **<u>cannot</u>** be used to demonstrate that he was not compliant with the officers at the time of the incident. Accordingly, the Court **RESERVES** ruling on this motion until the Court hears his testimony.

### C.    Grismore's conduct at the hospital

Plaintiffs seek to exclude evidence and testimony regarding "Timothy Grismore's alleged conduct at the hospital on the night of the incident." (Doc. 67 at 2) According to Plaintiffs, "During the incident, Timothy Grismore suffered major injuries," including "a through-and-through injury to his lower lip, resulting in an opening on his chin that led into the inside of his mouth." (<u>Id</u>. at 6) Grismore was taken to the hospital, where "he had an encounter with nurse Maria Pineda, which is the subject of a number of factual disputes among the parties." (<u>Id</u>.) Officer Luevano's report indicates:

> Officer Melendez and I transported Grismore to the Kern Medical Center to be medically cleared. Officer Melendez contacted the nurse in charge, Maria Pineda, who attempted to get vitals from Grismore and further assist him in providing him medical aid. Grismore began yelling at Pineda stating, quote, 'Fuck all that shit. Look at my lip. That shit hurts.' Pineda stated she was merely attempting to gather vital information to further assist him and provide him medical aid at which time he replied, 'Look at my fucking lip. That's what's wrong, bitch,' It was apparent that Grismore did not want to have his vitals checked and Pineda advised she would not continue to assess Grismore's vitals if he were to continue refusing to cooperate.

(Doc. 67 at 7, quoting Pineda Depo. 20:15-21:10) Grismore denied that he raised his voice at the nurse and that he used the language stated in the report. (<u>Id</u>.; see also Doc. 75 at 73-74, Grismore Depo. 50:8-51:12) Regardless of the disputed veracity of the report, Plaintiff contends the evidence should not be admitted because "the encounter with Nurse Pineda took place after the incident, the officers were not aware of it and it does not bear on any element of any claim or defense." (<u>Id</u>. at 8)

Defendants acknowledge the evidence related to Grismore's conduct at the hospital "is not determinative of whether the force was excessive or the arrest lawful," but contend the evidence "is extremely relevant to the issue of credibility." (Doc. 75 at 9) Defendants contend: "The language used by Mr. Grismore in regard to Ms. Pineda (which he denies using) is the exact same type of language Mr. Grismore used in relation to the involved officers immediately before. Mr. Grismore denies using this language in both instances and denies that he would ever use that type of language. Nurse Pineda impeaches that testimony." (Id. at 8) Further, Defendants contend the evidence "is consistent with what the Defendant officers have testified to," because the "hostile and aggressive conduct began when he encountered the officers and the exact same conduct continued when Mr. Grismore was taken to Kern Medical Center." (Id. at 9)

As Defendant's acknowledge, the alleged conduct at the hospital is not relevant to the claims presented in the action. However, the evidence *may* address a failure to mitigate damages, assuming there is a sufficient foundation, and *may* address his veracity.[1] For example, if Mr. Grismore attempts to describe his own conduct as calm/peaceful or denies cursing at the hospital, he attempts to describe the nurse's or the officers' conduct while at the hospital in his direct testimony, the defendants will be entitled to present their own testimony on this topic and the testimony of the nurse. Thus, the defendants are permitted to ask Mr. Grismore if he cursed at the nurse, but may not introduce any other evidence on this topic unless the conditions noted here occur. Thus, the motion is **GRANTED in PART**, **DENIED in PART** and **RESERVED** in **PART**.

### D.      Plaintiffs' Academic Records

Plaintiffs seek exclusion of "Plaintiffs' academic records, enrollment history, and grades, including the issue of whether Timothy Grismore was enrolled in college at the time of the incident." (Doc. 67 at 2, 4) Plaintiffs anticipate that Defendants will "confront Grismore at trial with statements he made suggesting that he was a student at the time of this incident, which are contradicted by the academic records." (Id. at 9) According to Plaintiffs, Grismore "concealed the fact that he was doing

---

[1] The fact that he testified he was compliant at the hospital and did not curse at the nurse, does not demonstrate he lied under oath. At most, it demonstrates that one or more of Mr. Grismore, the nurse or the officers have not told the truth.

poorly in college from his friends and family" "[o]ut of shame and embarrassment." (Id.) He asserts that his failure "to thrive in his first attempt at college" is "embarrassing information" that does not bear on a claim or defense, "and his status as a student played no role in the detention or arrest." (Id.) Therefore, Plaintiffs assert the evidence related to Plaintiff's academic records, enrollment history, and grades "is irrelevant because it is outside the time frame of the incident and constitutes information not known to the officers at the time of the incident." (Id.)

On the other hand, as Defendants observe that "Grismore testified under oath at his deposition multiple times that he dropped out of school shortly after this incident and that he didn't finish the semester because of this incident – because he was emotional and had a lot of anxiety." (Doc. 75 at 10, citing Grismore Depo., pp. 8:6-21, 14:19-15:11, 69:1-14) These assertions of damages Grismore's enrollment status at the time of the incident is clearly related to the issue of damages and may impeach him related to the extent of his damages. The probative value of the evidence is not outweighed by prejudice, and is not likely to confuse the jury.

As the Court indicated in its pre-trial order, this motion is **GRANTED in PART**. Evidence related to the Plaintiffs' enrollment <u>at the time of the incident</u> may be introduced as to the issue of damages. (Doc. 65 at 4)

### III.  Plaintiffs' Motion in Limine No. 2 (Doc. 68)

Plaintiffs seek the exclusion of "any evidence, testimony, argument, or reference at trial to other specific incidents than the one at issue, including but not limited to specific crimes allegedly committed by persons other than the Plaintiffs." (Doc. 68 at 2) Plaintiffs anticipate that Defendants will introduce evidence of "heinous crimes committed by persons other than the Plaintiffs, perhaps alleging that these crimes placed the police on something like 'heightened alert' when they encountered Plaintiffs." (Id. at 3) Plaintiffs assert, "this category of material is irrelevant and prejudicial, and that any weight assigned by the jury to it would be illogical and speculative." (Id.) At the hearing, counsel clarified that they were not seeking to exclude evidence that the area was a "known" gang area" or that there had been significant criminal activity in the area. They are seeking to exclude evidence only as to the specifics as to the criminal activity—"five shootings," for example.

If the officers believed they were in a high crime area that posed unique safety challenges to law

enforcement and to the extent the defendants considered the nature of the neighborhood when developing their tactical plan, this information may be introduced, if a sufficient foundation is established.  See Ruvalcaba, 64 F.3d at 1328 (holding what is known and considered by the officer at the time of an incident bears on the facts and circumstances).  With the clarifications offered by counsel, the motion is **GRANTED**. Though the officers may testify the area is rife with gang activity, including "black gang activity," they may not testify as to any specific crimes occurring in the area other than the crimes they claim they saw the plaintiffs committing.

**IV.     Plaintiffs' Motion in Limine No. 3 (Doc. 69)**

Plaintiffs seek the exclusion of certain testimony by Clarence Chapman, Defendants' police practices expert.  (Doc. 69) According to Plaintiffs, Mr. Chapman "offered opinions about legal authorities (case law) and why certain evidence in this case is relevant and should be admissible" both during his deposition and in his report.  (Id. at 3) Plaintiffs seek the exclusion of such evidence, because the "categories of information are outside the scope of his expertise as a police practices expert."  (Id.)  In addition, Plaintiffs seek the exclusion of Mr. Chapman's opinion regarding the Bakersfield Police Department Internal Affairs Year End Reports "since Plaintiffs have dismissed their municipal liability claims in this case."  (Id.)

**A.     Opinions on case law and relevancy**

Under the Federal Rules, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702.  An expert witness may express an opinion with respect to an ultimate issue to be decided by the trier of fact.  Fed. R. Evid. 704(a).  An expert may not, however, "give an opinion as to [his] legal conclusion, i.e., an opinion on an ultimate issue of law." Hangarter v. Provident Life and Accident Ins. Co., 373 F.3d 998, 1016 (9 Cir. 2004) (citation and quotation omitted).  The Ninth Circuit explained, "[I]t is well settled that the judge instructs the jury in the law. Experts interpret and analyze factual evidence. They do not testify about the law because the judge's special legal knowledge is presumed to be sufficient, and it is the judge's duty to inform the jury about the law that is relevant to their deliberations."  United States v. Scholl, 166 F.3d 964, 973 (9th Cir. 1999).

Defendants agree that no witness "expert or otherwise, should be able to testify about particular evidence they found relevant or otherwise significant in forming their opinions." (Doc. 75 at 14) In addition, Defendants agree that "[n]o witness, expert or otherwise, should reference particular case authority." (Id.) Accordingly, Plaintiffs' motion to exclude testimony regarding case law, legal authority, and the admissibility of evidence is **GRANTED**.

### B.    Opinions on the Year End Reports

Defendants report they "agree that since the *Monell* claims have been dismissed, there is no point in wasting the jury's time going over Bakersfield Policies and Training Protocols." (Doc. 75 at 15) As a result, they do not expect their expert to "testify regarding BPD Policies and Training Protocols."[2] (Id. at 14)

Based upon the information provided by the parties, it appears any opinions from Mr. Chapman concerning the Bakersfield Police Department Internal Affairs Year End Reports are no longer relevant to this action. Thus, Plaintiffs' motion to exclude this evidence is **GRANTED**.

## V.    Plaintiffs' Motion in Limine No. 4 (Doc. 70)

Plaintiffs "move in limine for an order excluding any evidence, testimony, argument, or reference at trial to drugs (including marijuana) and alcohol." (Doc. 70 at 2) According to Plaintiffs, "any mention of marijuana in connection with the incident is irrelevant and prejudicial and should be excluded." (Id. at 3) Plaintiffs contend "the probative value of any such evidence is substantially outweighed by its danger of unfair prejudice." (Id.)

Notably, the Ninth Circuit observed: "In a case . . . where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of events over another is relevant and admissible." Boyd v. City and County of San Francisco, 576 F.3d 938, 944 (9th Cir. 2009). In Boyd, the Court determined there was no error in admitting evidence that a decedent had been on drugs at the time of a police shooting because the evidence "was highly probative of the decedent's conduct, particularly in light of [the decedent's] alleged erratic behavior…." Id., 576 F.3d at 949. Similarly, the Eight Circuit upheld the admission of evidence that an individual had been

---

[2] If the defendants choose to introduce this evidence despite the Court's ruling herein, the plaintiffs will be fully entitled to use these documents.

consuming alcohol where he claimed the officers used excessive force, because "the evidence of alcohol consumption was relevant to the jury's assessment" of whether the officer's actions were reasonable "in relation to all the circumstances of the situation that confronted him." See Turner v. White, 980 F.2d 1180, 1182-83 (8th Cir. 1992).

Courts throughout the Ninth Circuit have admitted evidence that a plaintiff was under the influence of drugs or alcohol, finding it is relevant evidence for the jury to consider when evaluating the circumstances faced by an officer. See, e.g., Turner v. County of Kern, 2014 WL 560834 at *2 (E.D. Cal. Feb. 13, 2014) (in a use of force case, finding evidence of intoxication was relevant "to explain [the decedent's] conduct and corroborate the officers' versions of events" but was "not relevant to the excessive force totality of the circumstances inquiry"); Sanchez v. Jiles, 2012 WL 13005996 at *23 (C.D. Cal. June 14, 2012) (holding evidence of intoxication was relevant under Boyd, because the individual's drug and alcohol use could "substantiate officers' observations," including "allegedly peculiar actions and … refusal to obey officers' commands"); Lopez v. Aitken, 2011 WL 672798 *2 (S.D. Cal. Feb. 18, 2011) (evidence of "intoxication at the time of the incident" was "relevant and admissible" because it "substantiat[ed] Defendants' assertions that Mr. Lopez was acting irrationally and unpredictably at the time of the incident, and their claims that Mr. Lopez resisted arrest") (emphasis omitted); Cotton v. City of Eureka, 2010 WL 5154945 at *7 (N.D. Cal. Dec. 18, 2010) (holding evidence that an individual was under the influence of drugs "may be probative of his behavior at the time of the incident"). On the other hand, if possible intoxication was not "a factor in [an] officer's decision" to use force, evidence of alcohol or drug consumption may be excluded. See Burke v. City of Santa Monica, 2011 WL 13213593 at *4(C.D. Cal. Jan. 10, 2011).

In Turner v. County of Kern, 2014 WL 560834 at *3 (E.D. Cal. Feb. 13, 2014), this Court analyzed the dichotomy of the Boyd and Hayes v. County of San Diego, 736 F.3d 1223 (9th Cir. 2013). holdings. The Court stated,

> The Court reads Hayes to mean that, if an officer does not know or believe someone to be intoxicated, evidence of intoxication may not be considered under the totality of the circumstances in assessing whether an officer acted reasonably/used excessive force. See id. However, Hayes does not say that evidence of intoxication is inadmissible for all purposes. Hayes neither discussed nor cited to Boyd. This is likely because in Hayes, there was no dispute about what Hayes was doing before he was shot, and there was no argument that the evidence of alcohol consumption was relevant to explain Hayes's actions. That is different from this case.

10

Here, because Turner's actions and conduct are in dispute, *Boyd*, and not *Hayes*, controls. However, as Defendants concede, the evidence is relevant only to explain Turner's conduct and to corroborate the officers' version of events; the evidence is not relevant to the excessive force totality of the circumstances inquiry.

Turner, at *3.

Defendants assert evidence of drug and alcohol use should be admitted, because the officers' observations of Timothy Grismore at the time of the incident included a belief that he was under the influence. (Doc. 75 at 15) Specifically, Officer Melendez "testified that he could smell an odor of marijuana on Mr. Grismore." (Id., citing Melendez Depo. 94:7-15, 94:22-95:3) In addition, Officer Luevano "testified that Mr. Grismore "smelled of marijuana, had watery eyes, [and walked with] an unsteady gait," and Officer Luevano "believed that Mr. Grismore was under the influence of drugs and/or alcohol." (Id. citing Luevano Depo., pp. 54:5- 55:14) These observations were in the Aretis Booking Sheet, which is a document included on Plaintiffs' evidence list. (See id. at 15; Doc. 63 at 25) Indeed, as Defendants observe, Grismore was charged with a violation of Penal Code § 647(f), for "disorderly conduct: alcohol and/or drugs, or toluene." (Doc. 75 at 15)

Defendants also assert the evidence is relevant due to inconsistent statements by Grismore concerning marijuana use. According to Defendants, "immediately following [the] incident … Grismore clearly and unequivocally state[d] that he had been smoking weed that night," though he later "testified at his deposition that he had not smoked marijuana on the night of the incident." (Doc. 75 at 16) (emphasis omitted) Thus, Defendants conclude "would be completely inequitable to exclude this evidence when it is clearly part of Mr. Grismore's arrest as reflected in both the testimony of the officers and in the police report and booking sheet and where Mr. Grismore is alleging that he was wrongfully arrested, and where it is additional impeachment of Mr. Grismore." (Id.)

Notably, Officer Luevano testified that at the time he first swung his baton at Grismore, he did not have a belief in his mind that Grismore was under the influence of marijuana. (Luevano Depo. 55:23-56:1) Instead, he formed his belief *after* the physical altercation, based upon "the fact that [Grismore] had red, watery eyes, unsteady gait" and officers found marijuana in Grismore's possession. (Doc. 75 at 76, Luevano Depo. 55:5-11) However, Officer Luevano also testified that because Grismore "was hostile from the very beginning [Officer Luevano] suspected that he may be

under the influence of some sort of narcotic possibly." (Id., Luevano Depo. 55:11-14)

Officer Melendez testified that once he exited the vehicle to approach Plaintiffs, he observed Grismore was "highly agitated" and smelled of marijuana. (Id. at 50, Melendez Depo. 94:22- 95:3) Thus, the officers report they perceived that Grismore may be under the use of drugs—although the exact drug at issue was not known to them.[3]

On the other hand, under *Devenpeck v. Alford*, 125 S.Ct. 588 (2004), an officer is not liable for a false arrest under the Fourth Amendment unless the officer lacked probable cause to support *any* offense regardless of the offense actually charged or the one in the officer's mind at the time.[4] *Devenpeck* held,

> Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. *See Whren v. United States*, 517 U.S. 806, 812–813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (reviewing cases); *Arkansas v. Sullivan*, 532 U.S. 769, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001) (per curiam). That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause. As we have repeatedly explained, " 'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.' " *Whren, supra*, at 813, 116 S.Ct. 1769 (quoting *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)).

*Id.* at 593-594.

Consequently, Plaintiffs' motion to in limine to exclude evidence of drug and alcohol use is **GRANTED** in part and **DENIED** in part. Defendants may present evidence of the suspected marijuana use on the date of the incident, including the officers' personal observations, the Aretis Booking Sheet, the Police Report, his admission of marijuana use and his possession of marijuana at the time *only if* they first demonstrate that this bore on their decision to detain either defendant and to arrest either defendant. Luevano has made clear that whether Mr. Grismore was intoxicated did not bear on his decision of the level of force to use. The evidence related to Melendez is less clear. Thus, he may not introduce this evidence as bearing on the "excessive force totality of the circumstances inquiry," unless he first demonstrates that the claimed intoxication impacted the need to use force or the level of force to use. To the extent Defendants seek to introduce evidence of any marijuana or

---

[3] There is clearly a dispute of facts regarding Grismore's conduct during the incident.
[4] Notably, an officer is not obligated to inform the arrestee of the reason for the arrest. *Devenpeck*, at 595.

alcohol use by Plaintiffs at any time other than the day of the incident, such evidence is not relevant and shall not be introduced.

Whether the plaintiff may introduce evidence that he had a "marijuana card" is **RESERVED**. If the plaintiffs failed to produce discovery on this topic, it will not be admitted. If they produced such discovery, the Court will need to be apprised of this outside the presence of the jury to determine whether this information can be admitted.

## VI.    Plaintiffs' Motion in Limine No. 5 (Doc. 71)

Plaintiff filed this motion to initiate a discussion as to "how the issue of Hines' booking should best be handled at trial." (Doc. 71 at 8.) Defense counsel argue that evidence that Poteete and/or Clark conspired to improperly maintain Hines' arrest is extremely weak and argue in their opposition that the evidence should not be permitted. (Doc. 75 at 16-19) However, the Court is not allowed to use a motion in limine as a motion for summary judgment.

On the other hand, exactly what the plaintiff were hoping to achieve with their motion is unclear. How they choose to present their case, within the boundaries of the Rules of Evidence, is their decision. In doing so, they may rely upon admissible evidence only and are ethically precluded from attempting to admit inadmissible evidence, including, for example hearsay unless there is an exception to the general prohibition on doing so. Thus, the motion is **DROPPED** as inappropriately made.

## VII.    Defendants' Motion in Limine A (Doc. 66 at 9)

Defendants anticipate that "Plaintiffs will argue or attempt to introduce evidence that the City's policies, training, or discipline of its officers is inadequate." (Doc. 66 at 9) Because Plaintiffs dismissed their <u>Monell</u> claims, Defendants assert "testimony or evidence which suggests or implies inadequate policies, training and/or discipline is completely irrelevant and should be excluded under Fed. R. Evid. 402." (<u>Id.</u> at 9-10) In addition, Defendants assert "any probative value that exists is far outweighed by the prejudicial value to Defendants, confusion of the issues, and potential to mislead the jury." (<u>Id.</u> at 10, citing Fed. R. Evid. 403)

In response, Plaintiffs contend, "the defendant officers' training and department policy are relevant factors to consider in (1) determining whether the force used was reasonable, and (2)

determining whether the officers should be entitled to qualified immunity."  (Doc. 76 at 5, citing, e.g., Drummond v. City of Anaheim, 343 F.3d 1052 (9th Cir. 2003)) Plaintiffs report they "intend to cross-examine the officers regarding the applicable training they received," and anticipate both police practices experts will refer to the "police standards and training."  (Id.)

Notably, the question of qualified immunity is one for the Court so the evidence is not relevant for the jury's determination.  Moreover, the reasonableness of the officer's conduct does not depend upon the training policies.  The policies, if deficient, would not excuse liability and if they are overly protective of the individuals, they would not impute liability.

Because Plaintiffs' Monell claims were dismissed, any evidence of whether the officer's conformed their conduct to the City's policies, practices governing training, and discipline is irrelevant and is likely to cause significant jury confusion.  Accordingly, Defendants' motion to exclude such evidence is **GRANTED**.

## VIII.   Defendants' Motion in Limine B (Doc. 66 at 10)

Defendants believe that "Plaintiffs may call Bakersfield Chief of Police Lyle Martin, Bakersfield Police Officer Gary Carruesco, Jerial Fite, and Lacresha Conner to testify at the trial of this matter."  (Doc. 66 at 10) Defendants report that Plaintiffs' counsel, Neil Gehlawat, indicated on December 11, 2018, "that he did not anticipate calling any of these witnesses."  (Id.)  Defendants now seek "an Order from this Court confirming that these witnesses will not be called at trial."  (Id.)

Based upon the agreement of the parties, Defendants' motion is **GRANTED** in part, and Bakersfield Chief of Police Lyle Martin, Bakersfield Police Officer Gary Carruesco, and Lacresha Conner shall not be called as witnesses at trial.  The only issue related to whether Mr. Fite may be needed for impeachment. Thus, the Court **RESERVES** ruling as to the testimony of Jeriel Fite.

## IX.      Defendants' Motion in Limine C (Doc. 66 at 10)

Defendants seek to exclude specific exhibits disclosed by Plaintiffs, including photos, medical records, police reports, personnel records and various documents.  (Doc. 66 at 10-17)

### A.      Exhibit No. 2 – Photographs of Mr. Hines

During the parties' meet and confer efforts, Plaintiffs indicated they "did not intend to seek the admission into evidence of any [p]hotographs of Xavier Hines."  (Doc. 76 at 7; see also Doc. 66 at 10)

Based upon the agreement of Plaintiffs to withdraw this evidence, Defendants' motion to exclude Exhibit No. 2 is **GRANTED.**

**B.      Exhibit No. 3 – Medical Records of Mr. Grismore**

Defendants contend Mr. Grismore's records from Kern County Medical Center "should not come into evidence as they constitute inadmissible hearsay."  (Doc. 66 at 10) In addition, Defendants argue these "medical records are far more prejudicial than probative" and would confuse the jury. (Id. at 11) In addition, Defendants assert the records "would do nothing more than confuse the jury," because they "obviously contain scientific concepts which are far more complex than an average individual would be able to understand."  (Id.)

1.      Hearsay

Hearsay statements are those "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Such statements are inadmissible unless a statement falls within a recognized exception to the hearsay rule. See, *e.g.*, Fed. R. Evid. 803.  For example, statements made within medical records for the purposes of medical diagnosis have been recognized as an exception to the hearsay rule on several grounds. See Fed. R. Evid. 803; see also United States v. Hall, 419 F.3d 980, 987 (9th Cir. 2005) (statements of a victim to her medical provider that boyfriend caused injuries were made for purpose of medical treatment and thus admissible).

Defendants argue, "Medical records from Kern County Medical Center pertaining to Mr. Grismore all constitute hearsay" and they "object to the admission of such statements absent Plaintiffs showing that there is a hearsay exception which would otherwise authorize their admission."  (Doc. 66 at 11) In response, Plaintiffs contend they "reserve the right to call a witness from Kern Medical. Such a witness may, depending on the circumstances, be asked to authenticate the records evidencing Plaintiff Grismore's injuries and treatment at Kern Medical." (Doc. 76 at 7) According to Plaintiffs, "Even if the medical records themselves are not admitted into evidence, they can be referred to (as an exhibit) by the witness who testifies about them."  (Id.)  Therefore, "Plaintiffs wish to reserve their right to admit certain portions of Plaintiff Grismore's records depending on the Defendants' disputes with Grismore's injuries and treatment." (Id.)

Previously, this Court observed that "information regarding medical opinions and observations from medical records are hearsay, and may not be admitted without a testifying medical professional." Gilmore v. Lockard, 2017 WL 615155 at *2 (E.D. Cal. Feb. 14, 2017). There is no showing by Plaintiffs that statements in the records were made "for medical diagnosis or treatment," such that the hearsay exception applies. Further, Plaintiffs have not demonstrated the medical records are "records of a regularly conducted activity" at this juncture, such that the records would be admissible. See Pope v. Los Vegas Metro Police Dep't., 647 Fed. Appx 817, 819 (9th Cir. 2016). However, if Plaintiffs call a witness from Kern Medical who can lay an adequate foundation, the medical records *may* be admissible. See United States v. Hall, 419 F.3d 980, 987 (9th Cir. 2005) (noting that "medical records … [are] classic exceptions to the hearsay rule" when a proper foundation is laid, showing the medical records were "kept in the ordinary course of business"); see also Gilmore, 2017 WL 615155 at *2. However, to reiterate, the plaintiff must demonstrate a hearsay exception for each level of hearsay before the records can be admitted.

Finally, the Court notes Defendants fail to identify any portions of the medical records that would confuse the jury. With the proper foundation, the probative value of the medical records would outweigh any potential prejudice to Defendants. Accordingly, Defendants' motion to exclude Exhibit No. 3 is **RESERVED**. See Gilmore, 2017 WL 615155 at*2; see also Thomas v. Garcia, 2013 WL 3773861 at *9 (E.D. Cal. July 17, 2013) (denying a motion in limine to exclude medical records without prejudice).

**C. Exhibit No. 4 – Injury Photographs of Mr. Grismore**

Plaintiffs agree to withdraw this exhibit, because the "photographs also appear in Exhibit No. 1" and it is a duplicate. (Doc. 76 at 7) Defendants' motion to exclude Exhibit No. 4 is **GRANTED**.

**D. Exhibit 5 – Bakersfield Police Department Offense Hardcopy Police Report**
**Exhibit 6 – Bakersfield Police Department Use of Force Report**
**Exhibit 11 – Bakersfield Police Department CAD Call Hardcopy**

Defendants seek the exclusion of these documents because "they contain inadmissible hearsay and are confusing and therefore prejudicial." (Doc. 66 at 11) According to Defendants, each of "these documents contain inadmissible hearsay under Fed. R. Evid. 801." (Id., citing Luong v. City & Cnty.

of San Francisco Police Dep't, 630 Fed. Appx. 691, 694 (9th Cir. 2015))  Defendants contend there is also "little probative value to these documents in that the Plaintiffs can elicit testimony from the Defendants and others as to the content of these documents without admitting them into evidence." (Id.)  Defendants also believe the "documents would be duplicative and cumulative of testimony that will be given by witnesses in the case."  (Id. at 12)  Plaintiffs oppose exclusion of these documents, arguing they contain relevant and admissible evidence.  (Doc. 76 at 8)

### 1.    Hardcopy Police Report

Plaintiffs contend the entirety of the police report should not be excluded as hearsay, "because it was authored by Defendants Melendez and Luevano who are parties to the case."  (Doc. 76 at 8)  Plaintiffs acknowledge that statements attributed to others, such as nurse Maria Pineda, are not admissible, but maintain the remainder of the report should be admitted.  (Id., quoting Colvin v. United States, 479 F.2d 998, 1003 (9th Cir. 1973)).

Significantly, statements of a defendant officer's own observations are not hearsay as a party opponent. See United States v. Felix-Jerez, 667 F.2d 1297, 1299 (9th Cir. 1982); see also Fed. R. Evid. 801(d)(2)(B). Thus, the Ninth Circuit determined that "[e]ntries in a police report based on an officer's observation and knowledge may be admitted, but statements attributed to other persons are clearly hearsay, and inadmissible under the common law exception to the hearsay rule." Colvin, 479 F.2d at 1003.  Consequently, observations of Officers Meldendez and Luevano in the police report—which Melendez drafted— should not be excluded as hearsay.  The statements of Officers Melendez and Luevano immediately following the incident are relevant, and the narrative form of the report is not likely to confuse the jury. On the other hand, as Plaintiffs acknowledge, statements in the report that are attributed to others are inadmissible as hearsay.  (See Doc. 76 at 8)

Defendants' motion to exclude the Exhibit No. 5 is **GRANTED** in part.  Statements made by the defendant officers are admissible.  If the Police Report is admitted, before it is published, it SHALL be redacted to exclude any statements or observations except those made by the defendants and each defendant may only be confronted with their own statement, unless plaintiff's make a further showing.

### 2.    BPD Use of Force Report

Plaintiffs contend information in both the Police Report and Use of Force Report were "either

1   based on information that officers (allegedly) observed or on the (alleged) statements of people who are

2   parties to the case." (Doc. 76 at 8) However, the Use of Force Report was prepared by Sergeant

3   McAfee, and there is no indication in the document identifying how, or from whom, Sgt. McAfee

4   received the information entered. (See Doc. 66 at 37) Even still, McAfee's statement about what others

5   told him, is hearsay.  To the extent the Sgt. McAfee makes conclusions as to the propriety of the

6   officers' conduct, this improperly invades the province of the jury.

7       Because Plaintiffs have not identified an applicable exception the hearsay rule, Defendants'

8   motion to exclude Exhibit No. 6 is **GRANTED**.

9           3.       BPD CAD Call Hardcopy

10      Plaintiffs' Exhibit No. 11 is the Computer-Aided Dispatch ("CAD") Call log, which documents

11  information received by dispatchers and provided to officers.  (See Doc. 66 at 43-47)  The CAD log is

12  heavily coded, though it shows the date and times of reported information.  (Id.)  Plaintiffs contend the

13  document is relevant for:

14          establishing (1) the circumstances of the stop, including at the officers were not
            responding to any particular call but had initiated a "subject stop," (2) that there were
15          no dispatches connected with this incident regarding the "black criminal street gangs"
            that the officers subsequently attempted to invoke to justify the detention and arrest of
16          Plaintiffs, and (3) the timeline of the incident, as reflected in time stamps next to each
            individual radio dispatch.

17

18  (Doc. 76 at 8-9)

19      Though the CAD call log is heavily coded (See United States v. Corn, 2014 U.S. Dist. LEXIS

20  58814 at *16 (M.D. Fl. Feb. 14, 2014) (observing that because a CAD log was "heavily coded," even a

21  deputy reviewing the log "was unable to interpret all of the codes")), it cannot be introduced absent an

22  authenticating witness who, assumedly, could attest to the meaning of the entries.  Thus, at this point,

23  the Court does not find the CAD log is irrelevant and Defendants' motion to exclude Exhibit No. 11 is

24  **DENIED**.

25      **E.      Exhibits 12-18 – Bakersfield Police Department Policies
                Exhibit 19 – Bakersfield Policy Manual Rules of Conduct
26              Exhibit 21 – Bakersfield Police Department SEU Manual**

27      Defendants contend the Bakersfield Police Department policies, Rules of Conduct, and SEU

28  Manual "should not come into evidence" because they are not relevant to "whether the Defendants

violated the Plaintiffs' Constitutional rights." (Doc. 66 at 13)  Defendants also argue, "The introduction of these policies and manuals would be confusing and a waste of time."  (Id.)  Plaintiffs oppose exclusion of this evidence, asserting the materials are relevant to "whether the force employed in this case was objectively reasonable" and "whether reasonable officers would have been on notice that the force employed was objectively unreasonable."  (Doc. 76 at 11, quoting Drummond, 343 F.3d at 1062)

### 1. BPD Policies

Plaintiffs identified the following policies as exhibits: Policy 300 (Use of Force), Policy 306 (Handcuffing and Restraints), Policy 322 (Search and Seizure), Policy 340 (Disciplinary Policy), Policy 402 (Racial or Bias Profiling), Policy 439 (Detentions and Photographing Detainees), Policy 441 (Criminal Organizations) and Policy 900 (Custody Searches).[5]  (See Doc. 63 at 25-26; Doc. 66 at 12)

Importantly, Plaintiffs fail to explain how each of these policies are relevant to the inquiry of whether the individual officers used excessive force.  Because Plaintiffs dismissed the Monell claims, the issue at trial is whether the officers' conduct was lawful when compared to how a reasonably well-trained officer in this state would have responded.  The policies of the department—particularly those related to discipline, detentions and photographing detainees and criminal organizations—are irrelevant to this determination.

Further, although Plaintiffs contend the "policies bear on an element of negligence," Plaintiffs fail to identify *what* element.  (See Doc. 76 at 10) Under California law, "a claim of negligence in connection with the application of force by police personnel requires a showing of (1) a legal duty to use reasonable care, (2) a breach of that duty (3) proximate causation, and (4) injury to the plaintiff." Rodriguez v. City of Fresno, 819 F.Supp. 937, 951 (E.D. Cal. 2011) (citing Phillips v. TLC Plumbing, 172 Cal.App.4th 1133, 1139 (2009)).  Plaintiffs have not shown the BPD polices create a legal duty for the officers, such that they may be relevant to the negligence claim.  Indeed, they have offered no showing whether the policies fall below the constitutional standards or the prevailing standards locally, regionally, or nationally, that they meet these standards or that they exceed them. Thus, the failure of the officers to comport their conduct with these policies—or, in fact, if they *did* so comport their standards—does not establish the duty element for negligence.

---

[5] The Court notes that Plaintiff identified both Policy 306 and Policy 322 as "Exhibit 13."

On the other hand, if experts relied upon any of these policies to form their opinions, the policies may be discussed in their testimony. However, absent a foundational showing, including a showing the policies are not hearsay or there is a hearsay exception, the policies themselves will not be admitted. Accordingly, Defendants' motion to exclude Exhibit Nos. 12 through 19 is **GRANTED**.

### 2. BPD Manual Rules of Conduct and the SEU Manual

Plaintiffs identified the "BPD Policy Manual Rules of Conduct" as an exhibit (see Doc. 65 at 11), which Defendants believe is the "Bakersfield Police Department Policies and Procedure Manual– Appendix III Report Writing Manual." (Doc. 66 at 12, n. 1) According to Defendants, "[t]his Manual is 105 pages and provides guidance on general report writing as well as a significant number of pages dedicated to suggestions pertaining to cases involving domestic violence, sexual assault, stolen/embezzled vehicles, and other topics which have absolutely no relation to this case whatsoever." (Id.) Plaintiffs do not identify what portions of the Manual they believe are relevant to the issues to be adjudicated. Likewise, Plaintiffs do not identify relevant evidence in the SEU Manual, "which sets forth the missions and responsibilities of the Special Enforcement Unit" (Doc. 65 at 12, n. 2)

Because these documents are not relevant to the inquiry of whether the individual officers used excessive force, and do not create a legal duty owed to Plaintiffs, Defendants' motion to exclude the Rules of Conduct and SEU Manual is **GRANTED**.

### F. Exhibit 20- Bakersfield Police Department Memorandum Dated 07/23/2014

Plaintiffs concede this exhibit "is not needed at trial and may be excluded." (Doc. 76 at 10) Defendants' motion to exclude Exhibit No. 20 is **GRANTED**.

### G. Exhibit 22- Bakersfield Police Department Criminal Description Charge Search

The "Criminal Description Charge Search" is "a 58-page document which reflects individuals who have been arrested and charged with violation of Penal Code § 148(A) between 2013 and 2016," which Plaintiffs report was prepared by the American Civil Liberties Union. (Doc. 66 at 13; Doc. 76 at 10) According to Plaintiffs,

> The ACLU determined, for example, that where officers' use of force was especially unreasonable, there was evidence of overcharging. The ACLU concluded that BPD charging patterns indicate that its "officers are engaged in a practice of using criminal charges to preempt and defend against allegations of excessive force."

(Doc. 76 at 11) Defendants seek to exclude "this document, testimony, or argument based on this document as it has absolutely no relevance to the issues presented in this case, constitutes inadmissible hearsay, and is subject to exclusion under Fed. R. Evid. 403." (Doc. 66 at 14) Previously, the Court granted Defendants' motion "[t]o exclude any reference to the recent report issued by the ACLU." (Doc. 65 at 5) Because this document fails to speak to the conduct of the defendants, the motion is **GRANTED**.

### H.     Exhibit 23- Penal Code § 148

Plaintiffs identified California Penal Code Section 148 as an exhibit, which Defendants contend should not be used as an "exhibit." (Doc. 66 at 15) Because instructions on the relevant law are within the province of the Court, Defendants' motion to exclude Exhibit No. 23 is **GRANTED.**

### I.     Exhibits 24-34 – POST Learning Domains

In the Joint Pretrial Statement, Plaintiffs identified several POST Basic Learning Domains as exhibits, including:

> 24. California POST Basic Learning Domain #1: "Leadership, Professionalism and Ethics."
> 25. California POST Basic Learning Domain #2: "Criminal Justice System."
> 26. California POST Basic Learning Domain #3: "Policing in the Community."
> 27. California POST Basic Learning Domain #15: "Laws of Arrest."
> 28. California POST Basic Learning Domain #16: "Search and Seizure."
> 29. California POST Basic Learning Domain #18: "Investigative Report Writing."
> 30. California POST Basic Learning Domain #20: "Use of Force."
> 31. California POST Basic Learning Domain #21: "Patrol Techniques."
> 32. California POST Basic Learning Domain #23: "Crimes in Progress."
> 33. California POST Basic Learning Domain #33: "Arrest and Control."
> 34. California POST Basic Learning Domain #35: "Firearms/Chemical Agents."

(See Doc. 65 at 11-12) Defendants contend "[t]hese 'Learning Domains' are hearsay and are not probative of any issue in this case," and should be excluded. (Doc. 66 at 15, citing, e.g., Luong v. SF City & County, 2013 U.S. Dist. Lexis 77129 at *26, 2013 WL 1191229 at *7 (N.D. Cal. May 30, 2013); Descamaneto Gonzalez v. City of Garden Grove, 2006 U.S. Dist. Lexis 97148 at *15 (C.D. Cal. Dec.4, 2006))

In response, Plaintiffs contend, "The Ninth Circuit has held that a rational jury can rely on evidence of whether an officer's conduct comported with POST in assessing whether an officer's use of force was unreasonable." (Doc. 76 at 12, citing Smith v. City of Hemet, 394 F.3d 689, 703 (9th Cir. 2005) accord. Conan v. City of Fontana, 2017 WL 8941499 at *10 (C.D. Cal. Oct. 6, 2017). Thus,

Plaintiffs contend the identified "POST learning domains are relevant and admissible." (Id.)

In Luong, the court allowed some training materials to be admitted, finding "SFPD materials are relevant to the excessive force claim and Plaintiffs should be allowed to introduce such evidence at trial. The Court will instruct the jury, however, that such evidence does not set the legal standard for the reasonableness of the force used, but is merely probative." Id., 2013 WL 1191229 at *7. After trial, and apparently after the court excluded the introduction of Learning Domain 20, the plaintiff moved the court for a new trial on this basis. Luong v. SF City & Cty., 2013 WL 2389648 at *10 (N.D. Cal. May 30, 2013), aff'd sub nom. Luong v. City & Cty. of San Francisco Police Dep't, 630 Fed. App'x 691 (9th Cir. 2015). The Ninth Circuit determined a new trial was not warranted because the plaintiff relied upon the materials in cross-examining the defendants' expert and the plaintiff failed to set forth an exception to the hearsay rule. Id.

Likewise, in Destacamento Gonzalez—also cited by the defendants—the court held, "Plaintiffs' expert may base his conclusions on the contents of these training manuals, to the extent that he relied upon these documents in coming to his expert opinions. An expert may properly rely upon hearsay evidence. However, the manuals themselves are not admissible because they appear to be hearsay without an applicable exception." Id., 2006 WL 5112757, at *5.

Significantly, the rulings in Luong and Destacamento Gonzalez are consistent with the ruling in Conan, which Plaintiffs citied. In Conan, the defendants sought to exclude expert testimony that the actions of the officers violated POST learning domains. Id., 2017 WL 8941499 at *10. The Central District determined such evidence was relevant as to the reasonableness of the officer's actions, and determined "it will allow testimony as to whether the conduct by the officers complied with POST standards in the use of force." Id. Thus, the court determined testimony concerning the POST learning domains was permissible from an expert, but made no finding regarding the admissibility of specific learning domains as evidence.

Because Plaintiffs have not identified any exception to the hearsay rule for the identified Learning Domains, Defendants' motion to exclude these documents as exhibits is **GRANTED**. However, the experts may refer to the POST Learning Domains if the experts relied upon these documents in forming their opinions.

**J.      Exhibit 35 – Bakersfield Police Department IA Division Year End Reports**

Defendants seek to exclude the Reports, which "set forth various statistics pertaining to use of force including the number of total incidents, the type of force used, etc."  (Doc. 66 at 15) According to Defendants, because "Plaintiffs no longer have *Monell* claims pending, these reports are completely irrelevant and are not probative to any issue in this case." (Id.)  Plaintiffs acknowledge that "the direct probative value of this exhibit is diminished in light of Plaintiffs' decision not to pursue the *Monell* claims."  (Doc. 76 at 12-13) They assert the documents were identified as exhibits "in case Defendants open the door."  (Id.)

Previously, the Court granted Defendants' motion "[t]o exclude any alleged statistics regarding the use of force or deadly force by the Bakersfield Police Department… unless for purposes of impeachment." (Doc. 65 at 5) Consequently, Defendants' motion to exclude Exhibit No. 35 is **GRANTED**.

**K.      Exhibits 36-43 – Personnel Records**

Defendants seek to exclude evidence regarding personnel matters, noting Plaintiffs "designate not only the Personnel Records of the remaining defendants in the case, but also designate Personnel Records of individuals who are no longer named defendants in this case."  (Doc. 66 at 15) Defendants contend "there is no basis for Plaintiffs to introduce any document from any Defendant Officer's personnel file" and "excepts from the personnel files of non parties should not be admitted." (Id. at 16)

In response, Plaintiffs report they conducted a "further review of the personnel records in question in light of Defendant's motion, [and] do not intend to introduce them at trial." (Doc. 76 at 10) Accordingly, Defendants' motion in limine to exclude Exhibits Nos. 36 to 43 is **GRANTED**.

**L.      Exhibits 44-45 – Blue Team Reports**
**Exhibits 46-48 – General Offense Reports**

"Blue Team Reports reflect a 'post incident report' detailing any force that was used by a particular police officer."  (Doc. 66 at 16) Defendants seek the exclusion off the Blue Team Reports and the corresponding General Offense Reports. (Id.)  Defendants argue: "These 'Blue Team' reports have absolutely no relevance to the issues or claims to be tried in this case. These reports do not prove or disprove that the use of force in this case was excessive or not. These reports do not pertain to any

other issue in this case." (Id. at 17) According to Defendants, "the Blue Team Reports would serve no purpose other than to incense the jury and suggest that the Defendant Officers somehow used the force set forth in the Blue Team Reports, that they regularly used force and therefore, the use of force was somehow excessive or inappropriate." (Id.)

Plaintiffs argue the "police reports and blue team database entries from similar incidents represent a permitted use of character evidence because they tend to show the defendants' 'motive, opportunity, intent, preparation, plan, knowledge, … absence of mistake, [and] lack of accident'…" (Doc. 76 at 13-14, quoting Fed. R. Evid. 404(b)(2))

### 1. Prior Acts and Character Evidence

Federal Rules of Evidence 404(a) precludes a party form introducing evidence of a person's character to prove he acted in conformity with that characteristic on the occasion at issue. Evidence of other events may not be introduced to prove the person acted in conformity with his bad character trait on a particular occasion. Fed. R. Evid. 404(b)(1). Instead, this type of evidence may be admitted only for a different purpose including, "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Id.

### 2. Analysis

As an initial matter, Plaintiffs contend the motion to exclude General Offense Reports should be denied because "Defendants' motion seems to refer only to the 'blue team' reports." (Id. at 13) However, Defendants contend both "the "'Blue Team Reports' and the corresponding General Offense reports… refer to Defendants Luevano and Melendez for other incidents." (Doc. 66 at 16, emphasis in original) Thus, Defendants properly challenge the admissibility of both the Blue Team Reports and the General Offense Reports.

Notably, the Ninth Circuit determined "Character evidence is normally not admissible in a civil rights case." Gates v. Rivera, 993 F.2d 697, 700 (9th Cir. 1993). FRE 403 provides that relevant evidence may be excluded if the danger of unfair prejudice substantially outweighs any probative value. "Permitting the jury to consider the complaints and accounts of misconduct contained in the personnel files of [the defendant officers] present[s] a grave danger of unfair prejudice." Carter v. District of Columbia, 795 F.2d 116, 131 (D.C. Cir. 1986). Unfair prejudice results from the likelihood

that the jury "would conclude that the evidence established the bad character of the defendants and that the defendants were likely to have acted in the same way on the night in question." Id.

In short, Plaintiffs merely refer generally to the exceptions to the prohibition against character evidence without detailing which of the exceptions the evidence shows truly apply and how they apply.[6]  Thus, because Plaintiffs seek admission of the Blue Team Reports and the General Offense Reports to do nothing more than imply the officers acted in a similar manner, the evidence is improper under Fed. R. Evid. 404(a).  Therefore, Defendants' motion to exclude Exhibit Nos. 44 to 48 is **GRANTED**.

### M.    Exhibit 49 – Journal of Xavier Hines

Defendants contend the journal of Xavier Hines should be excluded as "self serving hearsay, cumulative, and prejudicial under Fed. R. Evid. 403." (Doc. 66 at 17) Defendants observe, "There is no basis for the Plaintiff to admit his own diary. Such statements are clearly hearsay and should not be admitted for their truth. (Id., citing, e.g., Grewcock v. Yale New Haven Health Services, 2018 U.S. Dist. Lexis 34850, at * 13 (Ct. Mar. 4, 2018); Miller v. Tyco Elecs., Ltd., 2012 U.S. Dist. LEXIS 164531, at *10-1 (M.D. Pa. Nov. 14, 2012); Fortier v. State Farm Mut. Auto Ins. Co., 2000 U.S. Dist. LEXIS 11361, at *14 (E.D. La. July 31, 2000) ["Although the diary is not admissible evidence, plaintiff may use it to refresh his recollection if he testifies to a lack of memory."])

Plaintiffs acknowledge that "Hines' journal is hearsay." (Doc. 76 at 14) However, Plaintiffs maintain the "diary is evidence of his damages and in particular the mental and emotional distress he suffered as a result of the incident." (Id.)  They assert, "Hines can testify at trial that he kept a journal after the incident, where he recorded his thoughts and feelings about what transpired during the incident and during the aftermath." (Id.)  According to Plaintiffs, this is consistent with "the *Fortier* case cited by Defendants, [that] the journal can be used to refresh Plaintiff Hines' recollection on the stand." (Id.)

Though Mr. Hines can refresh his recollection by review of the journal, he cannot testify from it

---

[6] Counsel for the plaintiffs argued that an earlier report used the same language related to the nature of the area where the earlier event occurred, that this demonstrated "cut and paste" when creating the instant police report.  Even if true, there is no showing how this bears on the issues.  Indeed, the location where the incident occurred is indisputably "a high crime area" and the Court's understanding is that the area where the earlier incident occurred is also.  Thus, the Court does not find this information has any probative value.

and his counsel cannot read it aloud in the presence of the jury.  If the journal refreshes his recollection, he can testify from his memory, however, this does not entitled him to introduce the journal.  .  See Fraser v. Goodale, 342 F.3d 1032, 1037 (9th Cir. 2003) (noting a diary could be used by a plaintiff to refresh her recollection, because "even inadmissible evidence may be used to refresh a witness' recollection"). Thus, the motion is **GRANTED**.

     **N.**     **Exhibit 50 – November 9 letter to Attorney General Xavier Becerra**

Prior to the filing of the motions in limine, Plaintiffs' counsel Neil Gehlawat informed Defendants that Plaintiffs would remove the letter from their exhibit list. (Doc. 66 at 254) Plaintiffs now assert the document was "included … on their exhibit list in case Defendants open the door." (Doc. 76 at 14)  Based upon the agreement of the parties, Defendants' motion to exclude Exhibit No. 50 is **GRANTED**.

     **O.**     **Exhibit 51 – ACLU Report**

Previously, the Court granted Defendants' motion "[t]o exclude any reference to the recent report issued by the ACLU… unless for purposes of impeachment."  (Doc. 65 at 5) The Court **SHALL** be alerted, outside the presence of the jury, before this evidence is presented.

**IX.**     **Conclusion and Order**

Based upon the foregoing, the Court **ORDERS**:

     1.     Plaintiff's motion in limine #1 (Doc. 67) is **GRANTED** in part as follows:

     a.     Evidence of prior misconduct by the plaintiffs **SHALL NOT** be admitted;

     b.     Evidence of subsequent misconduct by Hines is **RESERVED**;

     c.     The ruling is **GRANTED IN PART**, **DENIED IN PART**, and **RESERVED IN PART** as to Grismore's conduct at the hospital.

     d.     Evidence related to Grismore's enrollment in college at the time of the incident is **GRANTED IN PART** and **DENIED IN PART;**

2.     Plaintiff's motion in limine #2 (Doc. 68) is **GRANTED**;

3.     Plaintiff's motion in limine #3 (Doc. 69) is **GRANTED;**

4.     Plaintiff's motion in limine #4 (Doc. 70) is **GRANTED IN PART**;

5.     Plaintiff's motion in limine #5 (Doc. 71) is **DROPPED**;

6. Defendants' motion in limine A (Doc. 66 at 9) is **GRANTED**;

7. Defendants' motion in limine B (Doc. 66 at 10) is the motion is **GRANTED in PART** and **DENIED in PART**.

8. Defendants' motion in limine C (Doc. 66 at 10 ) is **GRANTED IN PART**, **DENIED IN PART**, and **RESERVED IN PART** as stated above.

**No party, witness or attorney is permitted to refer to the evidence excluded by this order, unless for impeachment purposes or because it is admissible on grounds not considered here and the issue is *first* raised with the Court.**

IT IS SO ORDERED.

Dated: __**January 14, 2019**__              _____**/s/ Jennifer L. Thurston**
                                                    UNITED STATES MAGISTRATE JUDGE