# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY GRISMORE et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF BAKERSFIELD, et al., <br><br> Defendants. | Case No.: 1:17-CV-00413- JLT <br><br> ORDER DENYING IN PART MOTION FOR DEFENDANTS TO WEAR POLICE UNIFORMS AT TRIAL (Doc. 74) <br><br> ORDER DENYING REQUEST TO MAKE A "MINI-OPENING" BEFORE JURY SELECTION <br> (Doc. 88 at 4-5) |

### I. Uniforms at trial

The defendants seek to be permitted to wear their uniforms at trial. (Doc. 74) They assert that "[T]hese uniforms are particularly important in this case because the Plaintiffs have stated that they were initially unaware that they were being confronted by police officers." Id. at 2. The plaintiffs argue that it is an improper display of authority that would seek to improperly endorse the defendants credibility. (Doc. 88 at 3)

A police officer's uniform is significant because it bears directly upon a citizen's obligations.

> Unlike the attire of, say, a UPS driver or a Southern California Edison repairman, police uniforms are not merely a means of identification; rather, police uniforms help convey and legitimize police officers' authority, enhance officers' ability to assert control over situations necessitating police involvement, increase officer safety, and deter crime. (See Caballero Decl., Ex. 11 [Garner Depo. Tr.] at 148–50,

1

> Ex. 12 [Perez Depo. Tr.] at 158–59.) Even the United States Supreme Court has acknowledged "the aura of authority surrounding an armed, uniformed officer." Berkemer v. McCarty, 468 U.S. 420, 438 (1984).

Nolan v. City of Los Angeles, 2009 WL 10652726, at *11 (C.D. Cal. May 5, 2009). The Nolan court continued,

> A number of California statutes reflect the notion that a police uniform conveys officers' authority and can influence and control citizens' behavior. For instance, California law obligates peace officers to display their badges while actively engaged in their law enforcement duties, Cal. Penal Code § 830.10, and prohibits peace officers from using "for private gain or advantage ... the badge, uniform, prestige, or influence of [their] local agency office or employment," Cal. Gov't Code § 1126. Section 1126 has been interpreted as precluding police officers from wearing their official uniforms in private employment without prior authorization. See Melendez v. City of Los Angeles, 73 Cal.Rptr.2d 469, 476 (Ct. App. 1998) (citing 65 Ops. Cal. Att'y Gen. 80, 83 (1985)). A police officer may, however, exercise "the powers of a peace officer" while employed as a private security guard or patrolman for a public or private entity while off duty so long as the officer is wearing a police uniform. Cal. Penal Code § 70. A more pointed example is the rule that a suspect may not be prosecuted for evading a pursuing peace officer while operating a motor vehicle unless the officer is, among other things, "wearing a distinctive uniform." Cal. Veh. Code § 2800.1(a)(4). Perhaps the most substantial recognition of the significance and impact of a police uniform is the California Legislature's prohibition of the impersonation of peace officers:
>
> > Any person other than one who by law is given the authority of a peace officer, who willfully wears, exhibits, or uses the authorized uniform, insignia, emblem, device, label, certificate, card, or writing, of a peace officer, with the intent of fraudulently impersonating a peace officer, or of fraudulently inducing the belief that he or she is a peace officer, is guilty of a misdemeanor.
>
> Cal. Penal Code § 538d;8 see also Cal. Penal Code § 146a. Section 538d implicitly recognizes that the average citizen responds much differently when the person issuing commands or pointing a firearm is someone clothed in a police uniform as opposed to plain clothes.
>
> In short, Defendant cannot reasonably contend that LAPD officers' uniforms do not convey and legitimize their lawful authority. A police uniform, with all of its various components, constitutes much more than mere attire and is essential to an officers' performance of her duties

Id. at 11-12. Other courts have noted that the police uniform was designed to inspire trust (Latino Officers Ass'n, New York, Inc. v. City of New York, 196 F.3d 458, 467 (2d Cir. 1999)) and deference. In Lemmon v. City of San Leandro, 538 F.Supp.2d 1200, 1204-1205 (N.D. Cal. 2007), the Court determined,

> The components of the police uniform trigger instant recognition of police officers. Along with this identification comes deference to the authority of police officers, which is essential to the efficient performance of police work. [Citations] To this

2

> end, an SLPD "Operations Directive" states that the uniform is a symbol that is essential to the Department's police work. [Citations] The patrol officer's uniform is also part of the continuum of force. The officer's command presence—which the uniform fosters—is the first of many points along the continuum that police officers regularly use to enforce the law and obtain compliance from members of the public. [Citations] In fact, the SLPD admits that the authority conferred by the uniform is essential to the performance of police work. [Citations]

Thus, the officers wearing the uniform at trial poses the significant potential of causing the jury, whether consciously or unconsciously, to defer to the officers' version of the events rather than fulfilling its obligation to determine the facts.

On the other hand, the excerpts of Mr. Grismore's deposition transcript submitted with the motion, do not clarify whether his initial failure to recognize that he was dealing with police officers was due to lighting conditions, not having looked in the direction of the officers or a claim that the uniform was not readily recognizable. (Doc. 74 at 6-7) When Mr. Grismore testified that he did not know before he had contact with the officers that they were police officers, seems to be explained by his testimony that he simply did not look in their direction. Id. at 6. When he testified that he didn't recognize the police officers as they walked toward him was explained by his testimony that, "It's still dark," implying that the navy-colored uniform couldn't be seen in the dark conditions. Id. Later, he admitted that he realized that the officers were "some sort of law enforcement . . ." though he didn't realize until after they asked certain questions that they were police officers. Id. at 7. He explained this by testifying that he couldn't see them; he could only hear them. Id. Thus, unless there is some reason to believe that the plaintiffs are contending the uniform or police car was seen by them but not recognized as police, the uniform addresses no topic at issue. Consequently, given the likelihood of improper influence the uniform will have on the jury, the officers' request to wear their uniforms at trial is **DENIED**.

**II.  Mini-opening statements before jury selection**

The plaintiffs request the Court allow a three-minute opening statement to the jury venire by each side at the beginning of jury selection. (Doc. 88 at 4-5) They do not demonstrate how this will assist in selecting a neutral jury and rely only on the fact that state courts are now required to allow this as support for the request. Id.

From the Court's experience trying cases in state court, jury selection is not well-controlled

in that forum; the attorneys make great efforts to "condition" the prospective jury to their version of facts and frequently make speeches under the guise of asking questions. These efforts are not directed toward selecting a fair and impartial jury but toward selecting a jury that is unfair to the opponent and partial to the party's case.

The fact that state courts accept these tactics has no bearing on how this Court will seek out a fair and impartial jury. Thus, because the request is unsupported by any binding authority—let alone any persuasive authority—or a reasonable rationale, the request is **DENIED**.

IT IS SO ORDERED.

Dated: **January 17, 2019**  /s/ Jennifer L. Thurston
UNITED STATES MAGISTRATE JUDGE